**KANSAS CITY POWER & LIGHT COMPANY and Kansas Gas and Electric Company, Plaintiffs,**

v.

**PITTSBURG & MIDWAY COAL MINING COMPANY, Kansas Department of Health and Environment, Environmental Protection Agency and Morris Kay, Defendants.**

Civ. A. No. 88–2224–S.

United States District Court,
D. Kansas.

Dec. 1, 1989.

Karl Zobrist, Randy Scheer, Michael Thompson, William H. Sanders, Blackwell Sanders Matheny Weary & Lombardi, Kansas City, Mo., Randy P. Scheer, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, Kan., for plaintiffs.

Benjamin L. Burgess, Jr., U.S. Atty., Leon J. Patton, Asst. U.S. Atty., Kansas City, Kan., Roger Marzulla, Asst. Atty. Gen., Stephen L. Samuels, Environmental Defense Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Mark D. Hinderks, Stinson, Mag & Fizzell, Overland Park, Kan., David E. Everson, W. Jane Watson, Kansas City, Mo., James G. di Zerega, Kent R. Olson, The Pittsburg & Midway Coal Mining Co., Englewood, Colo., Forrest E. Short, Short, Gentry & Bishop, Fort Scott, Kan., Yvonne Anderson, Sp. Asst. Atty. Gen., Kansas Dept. of Health and Environment, Topeka, Kan., for defendants.

MEMORANDUM AND ORDER

GERALD L. RUSHFELT, United States Magistrate.

Under consideration is plaintiffs' Motion for Protective Order (doc. 86) and plaintiffs' Amended Motion for Protective Order (doc. 106). Both motions seek an order compelling defendant to return documents clothed with the attorney-client privilege, inadvertently produced by plaintiff KCP &

L during discovery. They further seek an order that would preclude Pittsburg & Midway Coal Mining Company (hereinafter P & M) and its counsel from use of or reference to the privileged documents. The court deems the initial motion superceded by the amended motion.

█ The court utilizes the following five factors to determine if inadvertent disclosure of documents effects a waiver of the attorney client privilege:

1. The reasonableness of the precautions to prevent inadvertent disclosure;
2. The time taken to rectify the error;
3. The scope of discovery;
4. The extent of disclosure; and
5. The overriding issue of fairness.

*Hartford Fire Insurance Co. v. Garvey,* 109 F.R.D. 323 (N.D.Cal.1985).

█ With respect to the first factor, KCP & L claims its counsel diligently attempted to review each document and to identify and hold those protected under the attorney-client privilege. They withheld documents they considered to be privileged and listed them on an index. This index included all three documents at issue. Plaintiffs provided the list to defendant P & M. They intended for it thereby to identify documents which KCP & L did not intend to produce. Plaintiff KCP & L inadvertently produced copies of the three privileged documents from a different file. Originals remain in KCP & L's files.

The court finds KCP & L's procedures were adequate. It screened the documents. It determined they were privileged. It maintained the originals in its files. It is not clear how the copies were inadvertently produced, but the procedures employed to prevent disclosure appear adequate, given the scope of discovery in this case. P & M suggests a second screening would have prevented the disclosure. Through hindsight one may conceive of further precautions that might have prevented an inadvertent disclosure. Under the circumstances in this case the precautions were reasonable.

The second factor concerns the time taken to rectify the error. Here fourteen months elapsed after defendant initially received the documents until plaintiffs moved for a Protective Order (doc. 86). KCP & L however, contends it acted within two weeks of discovering the inadvertent production. In the court's view the relevant time should begin when plaintiff discovered or with reasonable diligence should have discovered the inadvertent disclosure. Plaintiff KCP & L could not have taken action to rectify the error until it learned of it. It thereafter sought to rectify the error within a reasonable amount of time. This factor weighs in favor of finding the privilege was not waived.

The third factor, scope of discovery, also weighs against a finding of waiver in this case. Plaintiff estimates 500,000 pages of documents have been produced and over 200,000 documents copied. Defendants have not disputed this estimate. As the court explained in *In re Wyoming Tight Sands Antitrust Cases,* No. 85–2349–S, unpublished (D.Kan. September 11, 1987):

Where document production is extensive . . . a finding that an inadvertent disclosure of privileged documents waives the attorney-client privilege or work-product protection does not advance the aim of full and free discovery. Parties might tend to produce fewer documents or delay production for fear of losing protection for otherwise valid, privilege claims.

*Id.* at p. 11. Citing *New York State Energy Research and Development Authority v. Nuclear Fuel Services, Inc.,* 36 Fed.R. Serv.2d 1511, 1519 (W.D.N.Y.1983).

The fourth factor, extent of disclosure, affords some bases to support the positions of both plaintiff and defendant. The memoranda of defendant P & M suggests its counsel have extensively used the three documents, particularly discovery depositions, and in preparing Count III of the amended counterclaim. On the other hand, the record does not confirm that the documents were so extensively used as defendant argues. The abstracts of deposition testimony, attached as exhibits to the memoranda, indicate only one document specifically identified during the deposition of Ronald Wasson. (Reply Exhibit 3, doc.

105.) Counsel for plaintiff objected to it. The testimony of the witness thereafter relates more to foundational and incidental details, rather than the substantive content of the document. Notwithstanding the assertions by defendant that it used the three privileged documents in preparing an amended counterclaim, moreover, the court finds nothing to confirm they were crucial to such preparation. The amended counterclaim itself does not refer to them. The motion for leave to file the amended counterclaim does not refer to them. The memoranda of defendant indicates the documents are supportive of Count III, rather than critical to it. In reviewing the three documents, the court does not find their content to be so obviously damning as defendant contends. Accordingly, the court finds little persuasion in the mere conclusion that these three documents have been extensively used since their inadvertent production. Undoubtedly counsel have intensively reviewed them. The court, however, does not consider intensive review to mean the same as extensive disclosure. On balance it finds the factor of extent of disclosure weighs in favor of plaintiff.

The fifth factor is the overriding issue of fairness. Plaintiff claims that fairness dictates a finding of waiver because the documents support its amended complaint. The three documents are memoranda written by Mark English, its in-house counsel. He sent them to KCP & L's Vice–President of Administrative Services. They bear the following dates: December 18, 1987; December 22, 1987; and January 8, 1987 (Documents attached as Exhibits 1 and 3 in Doc. 87 and sealed in Doc. 99). All three memos discuss KCP & L's obligations under the P & M contract. The first memo allegedly refutes plaintiff's allegations that they were unaware until the summer of 1987 of Kansas sulfur emissions limitations which applied to their LaCygne plant. They also allegedly contradict plaintiff's allegations that it cannot burn P & M coal and meet sulfur dioxide emissions standards.

The third memo allegedly supports P & M's Count II by establishing the following:

1. Plaintiff should have been aware their purported exculpatory grounds for avoiding the P & M agreement is meritless.
2. The risk of change in the sulfur dioxide emission limitations and the promulgation of continuous emission monitoring standards was a foreseeable risk to plaintiffs.
3. Even if the force majeure clause in P & M's contract is applicable to these events, it was and is possible for plaintiffs to overcome the alleged force majeure.
4. The magnitude of the cost of the force majeure is a relevant consideration. Only with respect to the commercial impracticability defense in K.S.A. 84–2–615 but that it is solely a seller's remedy.
5. The gross inequity clause of the contract offers no exculpatory grounds to plaintiff since any relief thereunder is not mandatory, but expessly subject to mutual agreement.

The third memorandum contains facts that could assist P & M in proving Items 1 through 5 above. It could also be probative to allegations in Count III of P & M's Amended Complaint, which alleges breach of the Uniform Commercial Code (hereinafter UCC) duty of good faith and fair dealing. P & M alleges this memoranda would support the following allegations pertinent to Count III:

1. Plaintiff sought to terminate the P & M agreement primarily for economic, not environmental reasons.
2. During at least the period from June 1983 to November 1987, plaintiff performed several economic buy-out studies, which focused on the P & M agreement.
3. In late 1986 plaintiff's position on the P & M's agreement changed from a buy-out to an exculpatory strategy.
4. Plaintiff's legal advisers offer plaintiff little hope on a variety of legally exculpatory theories.
5. In late 1987 or early January 1988 plaintiff seized upon the continuous emissions monitoring regulations as a convenient pretext to avoid the contractual obligations to P & M.

The third memorandum may be probative on these issues. The memos of December 18 and 22, 1987 are also probative for the same reasons. The court thus concludes the documents are relevant and probative.

This does not end the inquiry. The courts have considered other factors in a determination of a waiver question. The court also considers such factors as the effects of the documents on the search for truth. P & M argues the privilege should be strictly construed so it does not impinge on the more general overriding duty of insisting that investigations and decisions be based on truth and reality as opposed to fiction and fabrication. P & M relies on *Parkway Gallery Furniture v. Kittinger/Pennsylvania House Group*, 116 F.R.D. 46 (M.D.N.C.1987). This factor, however, is not compelling in this case. Much of the same information, if not all of it, was obtainable through other discovery.

The court also considers whether and to what extent P & M relied on these documents. In *Baxter Travenol Laboratories v. Abbott Laboratories*, 117 F.R.D. 119 (N.D.Ill.1987), the court considered the discovering party's reliance upon the documents. The discovering party in *Baxter Travenol* had quoted the document in memoranda filed with the court. In this case, however, defendants have not demonstrated a similar use of the documents. P & M has not otherwise demonstrated any justifiable reliance. Plaintiff objected on the record to use of the privileged documents before defendant P & M sought to amend its counterclaim. Moreover, plaintiff listed the documents on its index of privileged items. Defendant P & M has not adequately demonstrated that it has relied on the documents.

The court concludes the overriding issue of fairness militates against a finding of waiver. Defendant fortuitously obtained the privileged documents. It could not have expected to obtain them and could not have reasonably relied on them. To the extent defendant did rely on them, it did so without plaintiffs' knowledge or consent. Thus plaintiffs had no opportunity to object to defendant's use of them.

That the documents are relevant and probative does not determine the waiver question. The court also weighs other factors, such as the policy behind the privilege. If the attorney-client privilege is to serve its purpose of fostering attorney-client communications, then documents inadvertently produced should not lose their privileged status without some substantial reason.

Defendant also argues plaintiff waived the privilege by permitting Mr. Watson to provide deposition testimony (excerpts attached as doc. 105), regarding the content of the documents dated December 18 and 22, 1987. Plaintiffs argue only the December 18th memorandum was discussed. A review of this transcript, however, reveals no waiver of the privilege by association. Counsel for defendant read portions of the letter, but plaintiff had previously raised its objection. Defendant could not waive the privilege for the plaintiff. Watson provided testimony regarding matters referred in the letter, but Watson did not thereby waive the privilege. His testimony regarded facts previously in testimony. A client does not waive his attorney-client privilege merely by disclosing a subject which he had discussed with his attorney. *U.S. v. O'Malley*, 786 F.2d 786, 794 (7th Cir.1986). In order to waive the privilege, the client must disclose the communication with the attorney. *Id.* Watson disclosed no privileged communication through his testimony.

Considering all the foregoing factors, the court finds no waiver of privilege has occurred in this case. This is consistent with the modern trend that focuses on the intent of the producing party. *See e.g. Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103 (S.D.N.Y.1985). In *Lois Sportswear* a party inadvertently produced 22 privileged documents along with approximately 16,000 pages of non-privileged documents. The court held the privilege was not waived because defendants did not intend to waive the privilege. In that case counsel had instructed paralegals to segregate privileged documents from those produced. The precautions taken in *Lois Sportswear* were neither as effective

nor as prudent as those taken in the instant case.

For all of the above stated reasons the court deems the Motion for Protective Order (doc. 86) moot and grants plaintiff's Amended Motion for Protective Order (doc. 106). Accordingly, defendant Pittsburg & Midway Coal Mining Company shall forthwith return to KCP & L memoranda from Mark English bearing the following dates: December 18, 1987; December 22, 1987; and January 8, 1987 (attached as Exhibits 1 and 3 sealed in Document 87 and sealed in Document 99), including all copies. Defendant may not use these documents except by further order of the trial judge.

IT IS SO ORDERED.