**In re GRAND JURY 90–1 (Relating to Rutherford Kinerics, Inc., Petitioner).**

**Mis. A. No. 90–Y–147.**

United States District Court, D. Colorado.

Jan. 25, 1991.

Michael J. Norton, U.S. Atty., Kenneth Buck, Asst. U.S. Atty., Denver, Colo., for the Government.

Michael R. Enwall, Boulder, Colo., for petitioner.

## ORDER GRANTING MOTION TO QUASH SUBPOENA DUCES TECUM

SHERMAN G. FINESILVER, Chief Judge.

This matter comes before the court on petitioner Rutherford Kinerics, Inc.'s ("RKI") motion to quash subpoena duces tecum no. 12041CR, filed November 28, 1990. For the reasons below, the motion to quash is hereby GRANTED.

### I.

On March 15, 1989, Bradley K. Edwards ("Edwards"), then President of RKI, wrote to the law firm of Patton, Boggs & Blow ("Patton, Boggs"), requesting legal advice. Patton, Boggs responded on March 31, 1989. On April 21, 1989, Edwards wrote to the Board of Directors of RKI, discussing and enclosing the March 31 letter.

Grand Jury 90–1 issued a subpoena to RKI on October 22, 1990. Paragraph two of the subpoena ordered the production of "all internal memoranda referring to legal opinions concerning third-class rate for tax-exempt organizations." In their motion, petitioner indicated that the only internal memoranda not previously produced was the April 21 letter from Edwards to the Board of Directors. This letter is the only item which RKI seeks to avoid disclosing, claiming that it is protected by the attorney-client privilege.

### II.

■ The attorney-client privilege protects the confidentiality of communications between an attorney and the client made for the purpose of securing legal advice.[1] *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to "Custodian of Records",* 697 F.2d 277, 278 (10th Cir.1983); *Geralnes B.V. v. City of Greenwood Village,* 609 F.Supp. 191, 193 (D.Colo.1985). It protects both individuals and corporate

---

1. The law of privilege in federal courts is set forth in Fed.R.Evid. 501. It provides, in pertinent part, "[e]xcept as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501; *see United States v. Bernard,* 877 F.2d 1463, 1465 (10th Cir.1989).

entities. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 1990, 85 L.Ed.2d 372 (1985); *Upjohn Co. v. United States*, 449 U.S. 383, 394–95, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981); *see* Annotation, *Attorney–Client Privilege in Federal Courts: Under What Circumstances Can Corporations Claim Privilege for Communications from its Employees and Agents to Corporation's Attorney*, 9 A.L.R.Fed. 685 (1971 and Supp.1990). The purpose of the privilege rests upon the need of the advocate to know all that relates to the client's reason for seeking representation. *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980). The privilege encourages the client to make full disclosure to his or her attorney. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976).

In order to benefit from the attorney-client privilege, the movant must satisfy five elements: (i) the asserted holder of the privilege is or sought to become a client, (ii) the person to whom the communication was made is an attorney, or his subordinate, (iii) the communication is made in connection with the person's role as a lawyer, (iv) the communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing legal advice, services or assistance, and not for the purpose of committing a crime or tort, and (v) no waiver has occurred. *In re Inv. Bankers, Inc.*, 30 B.R. 883, 888 (Bankr.D.Colo.1983). In this situation, the asserted holder, Edwards in his capacity as President of RKI, communicated with an attorney, Timothy May ("May") of Patton, Boggs, for the express purpose of obtaining legal advice. If the issue was whether the communication between Edwards and May was covered by the privilege, there is

no question that it would be protected. However, the question before the court is whether a communication by Edwards, which passed on to RKI's Board of Directors advice given by May to Edwards, is privileged. Although the attorney-client privilege is to be construed narrowly, *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d at 278, we believe that it applies in this case.

Patton, Boggs offered legal advice to the President of its client, RKI. Edwards passed on the information to RKI's Board of Directors. As the client was RKI and not Edwards, relaying this information to the Board was merely making advice available to another part of this inanimate entity. Hence, the April 21 letter, which explicitly disclosed legal advice, is protected by the attorney-client privilege. *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir.1977); *In re Al Nagelberg & Co.*, 85 B.R. 711, 712–13 (Bankr.S.D.N.Y. 1988); *Barr Marine Prods. Co. v. Borg–Warner Corp.*, 84 F.R.D. 631, 636–37 (E.D. Pa.1979); *see also Eastern Technologies, Inc. v. Chem–Solv, Inc.*, 128 F.R.D. 74, 76–77 (E.D.Pa.1989).[2] Accordingly, the motion to quash is GRANTED.

### III.

Accordingly, it is ordered that petitioner Rutherford Kinerics, Inc.'s ("RKI") motion to quash subpoena duces tecum no. 12041CR, dated October 22, 1990, is hereby GRANTED.

---

**2.** In *Upjohn,* the Supreme Court explicitly rejected the control group test and adopted a broader formulation when the asserted holder of the attorney-client privilege is a corporation. *Upjohn,* 449 U.S. at 394–97, 101 S.Ct. at 685–86. *Diversified* and *Barr* preceded *Upjohn. Diversified* applied a standard remarkably similar to the one adopted in *Upjohn. Diversified,* 572 F.2d at 609. Its precedential effect therefore

remains strong. *Barr* applied the ultimately-rejected control group test. 84 F.R.D. at 634. As this formulation is narrower than the *Upjohn* standard, *Upjohn,* 449 U.S. at 392, 101 S.Ct. at 684, the *Barr* court would had to have reached the same conclusion under the broader *Upjohn* test. Hence, *Barr*'s persuasive value remains intact.