**Ken SHRIVER, et al., Plaintiffs,**

v.

**BASKIN–ROBBINS ICE CREAM COMPANY, INC., et al., Defendants.**

**Civ. A. No. 91–M–1458.**

United States District Court, D. Colorado.

Sept. 16, 1992.

---

Michael M. McGloin, Denver, Colo., for defendants, Creamland Dairies and Baskin–Robbins Ice Cream Co., Inc.

Michael Dommermuth, Denver, Colo., for defendant, Baskin–Robbins Ice Cream Co., Inc.

Jeremy Bernstein, Aspen, Colo., for plaintiffs, Ken and Connie Shriver.

### MEMORANDUM OPINION AND ORDER OF UNITED STATES MAGISTRATE JUDGE

PRINGLE, United States Magistrate Judge.

THIS MATTER comes before the Court on Plaintiffs' Motion to Compel Discovery Pursuant to Rule 37, F.R.C.P., and Motion for Determination that Document Is Not Subject to Attorney–Client or Attorney–Work Product Privilege (*hereinafter* Motion to Compel), as well as on Defendant Baskin–Robbins' Motion for Protective Order (*hereinafter* Motion for Protective Order). Pursuant to an Order of Reference entered on June 19, 1992, these motions were referred for determination in accordance with 28 U.S.C. § 636(a). A hearing was held on August 10, 1992. At that time, the Court entered an order permitting the parties to file supplemental evidentiary material in support of their positions. Baskin–Robbins has filed an affidavit of Michael D. Ulmer, while the Plaintiffs have submitted a transcript of Mr. Ulmer's deposition, taken on August 28, 1992. For the reasons stated below, the Court DENIES the Plaintiffs' Motion to Compel and GRANTS Baskin–Robbins' Motion for Protective Order.

### I.

This case involves a decision by the defendants not to exercise an option to renew a lease for the Baskin–Robbins store operated by the Plaintiffs. The initial determination not to renew the lease was made by the Baskin–Robbins Real Estate Review Board. Thereafter, on May 20, 1992, Mr. Ulmer, Baskin–Robbins' director of operations for the region, wrote a Memorandum recommending that the Board reconsider its decision (*hereinafter* Memorandum). It is a portion of this Memorandum, comprising two paragraphs, which is the subject of both the Motion to Compel and the Motion for a Protective Order. These two paragraphs state as follows:

> After having Legal review the correspondence generated between this operator, their attorney, and Baskin–Robbins, it seems there is a risk of losing any case if this franchisee were to pursue litigation.

> Based on this newest development, the Region feels it is in the best interest of the Company to exercise this option to avoid potential litigation and to continue

to influence this franchisee with his re-sale efforts.

The Memorandum, along with numerous other documents, were produced by Baskin–Robbins in response to the Plaintiffs' request for production. No discussion between counsel relating to the Memorandum occurred until Mr. Ulmer was first deposed on May 5, 1992. At that time, the Plaintiffs' counsel marked the Memorandum as deposition exhibit 49 and began to question Ulmer regarding its contents. Defense counsel immediately asserted that the two paragraphs quoted above were protected by the attorney-client privilege and that the document had been inadvertently produced without redacting the privileged portion.

### II.

■ "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection [may] be waived." 8 J. Wigmore, Evidence § 2292. Although the classic definition of the attorney-client privilege found in Wigmore refers only to communications made by the client to an attorney, it is clear that advice communicated by a lawyer to the client is also within the scope of the privilege. *People v. Tippett*, 733 P.2d 1183 (Colo.1987).[1] The burden of establishing that a communication is protected rests with the party asserting the privilege. *Colorado v. Schmidt–Tiago Constr. Co.*, 108 F.R.D. 731, 734 (D.Colo.1985); *Clark v. District Court*, 668 P.2d 3 (Colo.1983).

■ It is beyond doubt that a corporation is entitled to assert the attorney-client privilege. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985); *Natta v. Hogan*, 392 F.2d 686 (10th Cir.1968). Of course, a corporation can only act through

its officers, directors, agents, and employees. Consequently, communications between corporate counsel and company personnel are privileged so long as they concern matters within the scope of the employees' corporate duties. *Upjohn Co. v. United States*, 449 U.S. 383, 394–95, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981). An otherwise privileged communication by a lawyer to a corporate agent does not lose its protected status simply because the agent then conveys the attorney's opinion to a corporate committee charged with acting on such issues. *In re Grand Jury 90–1*, 758 F.Supp. 1411 (D.Colo.1991).

### III.

■ The parties do not dispute the legal principles discussed above. Their disagreement arises from differing interpretations of the pertinent paragraphs of the Memorandum. Specifically, the controversy centers on the clause "it seems there is a risk of losing any case if this franchisee were to pursue litigation." Plaintiffs assert that this opinion regarding the risk of losing a lawsuit is Mr. Ulmer's and, as such, is not protected even though it may be based on privileged information supplied to him by counsel. Conversely, Baskin–Robbins contends that the language in question reflects the opinion of corporate counsel and that Ulmer simply acted as a conduit in passing it on to the Real Estate Review Board.

The evidentiary record supports Baskin–Robbins' position on the source of the opinion regarding the risk of losing litigation. The affidavit of Michael Ulmer, filed in response to the Court's order permitting supplementation, states in material part:

6. The paragraph in my memo of May 10, 1991, which states, "After having legal review the correspondence generated between this operator, their attorney and Baskin–Robbins, it seems there is a risk of losing any case if this franchisee were to pursue litigation", was based entirely on conversations which I had with Bas-

---

1. Under Rule 501 of the Federal Rules of Evidence the issue of privilege is governed by state law if state law supplies the rule of decision in the case. Because jurisdiction in the present action is premised on diversity of citizenship, the law of Colorado will likely supply the rules by which the case will be resolved.

kin–Robbins in-house counsel. The conclusion stated in that paragraph was entirely the conclusion of Baskin–Robbins in-house counsel and was transmitted only to other members of the Real Estate Review Board.

■ The additional deposition of Mr. Ulmer, submitted in support of the Plaintiffs' Motion to Compel, contains nothing contradictory to the Ulmer affidavit. Indeed, Ulmer again confirmed that (a) the opinion regarding the risk of losing a lawsuit brought by the franchisee was generated by the legal department, and (b) his Memorandum merely passed legal counsel's conclusion on to the Real Estate Review Board.[2]

■ In summary, the Court finds that the fifth full paragraph of the Memorandum does reflect communications between Baskin–Robbins' in-house counsel and Mr. Ulmer and, as such, is privileged. Based on the principles enunciated in *In re Grand Jury 90–1,* 758 F.Supp. 1411 (D.Colo.1991), the Court further concludes that the privilege was not lost simply because Ulmer Memorandum conveyed this opinion of legal counsel to the Real Estate Review Board, which was charged with the authority to make decisions regarding lease renewals.

### IV.

■ There remains the question of whether the inadvertent disclosure of the Memorandum resulted in a waiver of any privilege that might have otherwise attached. There is a split of authority regarding the impact of inadvertent disclosure of privileged material. One view is that any disclosure, whether intentional or unintentional, results in a waiver. *In re Sealed Case,* 877 F.2d 976 (D.C.Cir.1989). Other courts have reached precisely the opposite conclusion, holding that an inadvertent disclosure never effectuates a waiver of privilege. *Georgetown Manor, Inc. v. Ethan Allen, Inc.,* 753 F.Supp. 936, 938 (S.D.Fla.1991) (inadvertent disclosure is the antithesis of a intentional relinquishment of a known right); *Lois Sportswear v. Levi Strauss & Co.,* 104 F.R.D. 103 (S.D.N.Y. 1985). Finally, a third group of decisions apply a balancing test based on the circumstances surrounding the disclosure, including (a) the reasonableness of the precautions taken to prevent inadvertent disclosure; (b) the time taken to rectify the error; (c) the scope of discovery; (d) the extent of disclosure; and (e) the overriding issue of fairness. *Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414 (3d Cir.1991); *Kansas City Power & Light Co. v. Pittsburg & Midway Coal Min. Co.,* 133 F.R.D. 171 (D.Kan.1989).

Although the Colorado Supreme Court has not expressly spoken on the issue, the Colorado case law is most consistent with the view that inadvertent disclosure *by counsel* does not produce a waiver. For example, the Colorado courts have clearly recognized that the attorney-client privilege is personal to the client and may only be waived by the client. *See e.g. Losavio v. District Court,* 533 P.2d 32 (Colo.1975). Further, the key inquiry in dealing with claims of waiver is whether the client, as the privilege holder, has expressly or impliedly forsaken a claim of confidentiality with respect to the information in question. *Mountain States Tel. & Tel. v. DiFede,* 780 P.2d 533 (Colo.1989).[3] There is nothing in

---

**2.** To be sure, Ulmer acknowledged on several occasions during his deposition that the recommendation to reverse the Board's prior decision regarding renewal was his. In essence, this recommendation is reflected in the following language found in the next to the last paragraph of the Memorandum: "... the Region feels it is in the best interest of the Company to exercise this option to avoid potential litigation and to continue to influence this franchisee with his resale efforts." Although defense counsel has argued that this language also should be redacted, the Court finds nothing in the record to suggest that it would be protected by the attor-

ney-client privilege. In contrast to the opinion regarding the risk of losing a case filed by the franchisee, the recommendation to exercise the option is that of Ulmer and not corporate counsel.

**3.** Even cases employing the balancing test have recognized that "if the attorney-client privilege is to serve its purpose of fostering attorney-client communications, then documents inadvertently produced should not lose their privileged status without some substantial reason." *Kansas City Power & Light Co. v. Pittsburg & Midway Coal Mining Co.,* 133 F.R.D. at 174. No

the record before the Court to suggest that the production of an unredacted copy of the Memorandum by Baskin–Robbins' counsel was other than an oversight. Further, the record is devoid of any indication that Baskin–Robbins expressly or impliedly abandoned the confidentiality which would otherwise attach to the portion of the Memorandum here in question. Accordingly, the Court rejects the Plaintiffs' contention that Baskin–Robbins has waived the privilege by inadvertent disclosure.

Based upon the foregoing, it is ORDERED that the Plaintiffs' Motion to Compel is DENIED and Defendant Baskin-Robbins' Motion for a Protective Order is GRANTED. The fifth paragraph of the Ulmer Memorandum shall be redacted in its entirety. In addition, the phrase "[b]ased on this newest development," as contained in the next to the last paragraph of the Memorandum shall also be redacted, because its presence in the Memorandum after redaction of the fifth paragraph would only serve to confuse and mislead the trier of fact.

"substantial reason" has been given in the case at bar for stripping the relevant portions of Ulmer Memorandum of their privileged status.