Roger Howell MYERS, Plaintiff,

v.

CITY OF HIGHLAND VILLAGE, TEXAS; Edward O'Bara, individually and as Chief of Police; and Conrad Bahr, IV, individually and as Captain of Police, Defendants.

Kevin Ray Hall, Plaintiff,

v.

City Of Highland Village, Texas; Edward O'Bara, individually and as Chief of Police; and Conrad Bahr, IV, individually and as Captain of Police, Defendants.

Case Nos. 4:02–CV–31, 4:02–CV–36.

United States District Court,
E.D. Texas,
Sherman Division.

Jan. 29, 2003.

Parker Douglas Young, Figari, Davenport & Graves, LLP, Dallas, TX, Dennis J. Eichelbaum, Schwartz & Eichelbaum, Frisco, TX, for defendants.

Jane Elizabeth Bishkin, Dallas, TX, for plaintiffs.

### *MEMORANDUM OPINION AND ORDER*

DAVIS, District Judge.

In this case, Defendant City of Highland Village (the "City") contends it inadvertently produced during discovery a copy of a confidential memo dated January 7, 2002, that would otherwise be protected from disclosure by the attorney-client privilege and work-product privilege. It has moved for a protective order directing Plaintiffs Kevin Ray Hall and Roger Howell Myers (collectively "Plaintiffs") to return the memo. Plaintiffs have declined to return the memo, contending that the memo is not subject to the attorney-client privilege and work-product privilege and, even if subjected to the privileges, the City has waived the privileges. After reviewing the parties' submissions and the applicable law, the Court finds that Defendant's Motion for Protective Order should be **GRANTED** as to paragraphs nine through thirteen and their subparagraphs. As to paragraphs one through eight, the Court finds that Defendant's Motion for a Protective Order should be **DENIED**.

### BACKGROUND

In the City's response to Plaintiff's request for production, the City mistakenly produced a confidential memo dated January 7, 2002. The memo was prepared by Betty Webb ("Mrs.Webb"), City Manager and acting representative of the City, upon information obtained from Terrence Welsh ("Mr.Welsh"), attorney for the City. The memo is stamped

"CONFIDENTIAL" and was distributed to the City Council. Apparently, in December 2001, Mr. Welsh wrote a detailed letter to Mrs. Webb regarding settlement negotiations. That information was taken and forwarded to the City Council in the January 7, 2002, memo under Mrs. Webb's name.[1]

The City seeks the return of the memo and asserts: (1) the memo is privileged because it contains attorney-client communications or the memo is immune from discovery as work product pursuant to Federal Rule of Civil Procedure 26(b)(3) and (2) the City inadvertently produced the memo and was diligent in pursuing its return. Plaintiffs, on the other hand, contend that: (1) the memo is not subject to the attorney-client privilege; (2) the memo is not subject to the work-product doctrine; (3) the attorney-client and work-product privilege have been waived; (4) Plaintiffs have shown a substantial need for the document under the work-product privilege; and (5) the crime-fraud exception to the attorney-client privilege applies.

### ATTORNEY–CLIENT PRIVILEGE

Plaintiffs bring their claims under federal law and, thus, federal law governs the analysis of the attorney-client privilege in this case. *See* FED R. EVID. 501; *United States v. Moore*, 970 F.2d 48, 49–50 (5th Cir.1992) (privilege questions are governed by the federal courts' interpretation of federal common law, except when state law supplies the rule of decision, in which case state law on privilege governs).

■ In order for the City to obtain the return of its document it must show that the document was subject to the attorney-client privilege. In *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir.1978), *cert. denied*, 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978), the Fifth Circuit adopted the following attorney-client privilege test:

The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* (quoting *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357 (D.Mass. 1950)). The burden of proof to establish the attorney-client privilege is on the privilege claimant. *See Kelly*, 569 F.2d at 938.

■ While the memorandum was written under Mrs. Webb's name, it is evident that the memo contains communications that were made to her by Mr. Welsh. Mrs. Webb addressed the memo to the City Council. "The privilege is not waived if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication." *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir.1985). The City Council and Mrs. Webb share a common legal interest and, therefore, she did not waive the privilege in sending the memo to the City Council.

■ Plaintiffs urge that the document contains facts, not attorney-client communications. In is indeed true that the privilege only protects communications, not facts. *See, e.g., Thurmond v. Compaq Computer Corp.*, 198 F.R.D. 475, 479 (E.D.Tex.2000) (citing C. MUELLER & L. KIRKPATRICK, EVIDENCE § 5.12 (2d ed.1999)); *see also Upjohn*

---

1. According to the uncontroverted affidavit of Mr. Welsh:

 Subsequent to forwarding this confidential correspondence to Mrs. Webb, she placed that same information in a confidential memorandum to the Highland Village City Council. That memorandum was dated January 7, 2002, and is almost a verbatim rendition of my confidential correspondence to Mrs. Webb. The only significant modifications were changing words from "I" to "Terry Welsh" and related syntax/noun-verb agreement issues. All other modifications were minor in nature and did not alter in any way my legal advice to my client, the City of Highland Village, Texas.

 Def.'s Mot. Prot. Order, Ex. 2.

*Company v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 685–86, 66 L.Ed.2d 584 (1981). After reviewing the document, it is clear that the first eight paragraphs of the memo contain underlying facts. These underlying facts are not protected by the attorney-client privilege. However, the Court finds that the settlement discussions are protected by the attorney-client privilege. *See Macario v. Pratt & Whitney Canada, Inc.,* 1991 WL 1004, at *4 (E.D.Pa. Jan.2, 1991) (finding that "discussions regarding settlement may be protected by the attorney-client privilege if the communication was conveyed for the purpose of receiving legal advice"). Protecting settlement discussions promotes the purpose of the attorney-client privilege, which is to encourage complete disclosure of information between attorney and client. *See Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Accordingly, the last five paragraphs, nine through thirteen and their subparagraphs, are protected by the attorney-client privilege.

## WAIVER OF ATTORNEY–CLIENT PRIVILEGE BY THE CITY'S PRODUCTION OF PRIVILEGED DOCUMENTS

■ Since the attorney-client privilege does not protect paragraphs one through eight of the memo it is not necessary to determine whether the privilege was waived.[2] However, the Court must determine whether the privilege was waived as to paragraphs nine through thirteen and their subparagraphs. In determining whether an inadvertent disclosure waives the attorney-client privilege, the court must "consider the circumstances surrounding a disclosure on a case-by-case basis. . . ." *Alldread v. City of Grenada,* 988 F.2d 1425, 1434 (5th Cir.1993). Factors to be considered include:

(1) the reasonableness of precautions taken to prevent disclosure;

(2) the amount of time taken to remedy the error;

(3) the scope of discovery;

(4) the extent of the disclosure; and

(5) the overriding issue of fairness.

*Id.* at 1433 (citing *Hartford Fire Ins. Co. v. Garvey,* 109 F.R.D. 323 (N.D.Cal.1985)).

■ Applying these factors to the present case, the Court concludes that the City has demonstrated that the privilege should be preserved. The first factor—the reasonableness of the precautions taken to prevent inadvertent disclosure—favors Plaintiffs. The City has the burden of proof and it has not established that it took any precautions to prevent the disclosure of the document. The City, in its Brief, did show that Mrs. Webb did not review the produced documents. However, this does not show what precautions the City took to prevent the inadvertent disclosure.

The second factor—the time taken to rectify the error—favors the City. The first time that the City learned that the Plaintiffs had the document was at the deposition of Mrs. Webb on November 21, 2002. The City promptly requested that the document be returned. Further, the City filed the instant Motion on December 13, 2002, approximately three weeks after learning of the inadvertent disclosure. *See Aramony v. United Way of Am.,* 969 F.Supp. 226, 237 (S.D.N.Y.1997) ("The period after the producing party realizes that privileged information has been disclosed is the relevant period for measuring whether the privilege has been waived.").

The third factor—the scope of discovery—favors the City. The City estimates that it produced documents containing approximately 1,500 pages. *See Lazar v. Mauney,* 192 F.R.D. 324, 330 (N.D.Ga.2000) (describing a production of 1,000 pages as "voluminous"). In producing this many pages, it is possible that a mistake will be made.

The fourth factor—the extent of the disclosure—favors the City. The City produced one, four-page, privileged document inadvertently out of 1,500 pages. The ratio of privileged documents produced to all documents produced is roughly the same as in this case

---

**2.** The Court notes that this result would be the same under the work-product privilege. As with the attorney-client privilege, the work-product privilege does not apply to the underlying facts

relevant to litigation, whether or not they have been reduced to writing or communicated to an attorney. *See Upjohn Company,* 449 U.S. at 395–96, 101 S.Ct. 677, 66 L.Ed.2d 584.

as it was in other cases where the court found no waiver occurred. *See id.* at 330 (holding that the privilege was not waived when three privileged documents were produced along with about 1,000 other documents); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 104 F.R.D. 103, 105 (S.D.N.Y. 1985) (holding that the privilege was not waived when 22 privileged documents were mistakenly produced along with 16,000 other documents).

 The fifth factor—fairness— weighs in favor of the City. In determining whether an inadvertent production of a privileged document amounts to a waiver, the importance of the attorney-client privilege must not be ignored. "The privilege is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Swidler & Berlin v. United States,* 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). A party to whom privileged documents are produced inadvertently has no inherent "fairness" interest in keeping them. This is especially true here where the document was labeled confidential. Any reliance by the Plaintiff on the continued availability of the documents would be unjustifiable. Contrary to what Plaintiffs argue, the potential value of the inadvertently produced document to the receiving party is not dispositive. *See, e.g. Kansas City Power & Light Co. v. Pittsburg & Midway Coal Mining Co.,* 133 F.R.D. 171, 174 (D.Kan.1989) (stating that the fact that the inadvertently produced documents are relevant, even helpful to the receiving party, is not dispositive). If this were the test, the fifth factor would always favor the receiving party. Finally, Plaintiffs assert that the "cat is already out of the bag." This argument rests on a narrow conception of the interests protected by the privilege. The privilege protects both disclosure and use. Although the harm that the City has suffered due to its inadvertent disclosure cannot entirely be undone, that is not an adequate reason why the Court should refrain from doing what it can to limit its use.

Of the five factors considered, four favor the City and one favors the Plaintiffs. Considering the five factors and all of the relevant circumstances, the Court finds that no waiver of the City's attorney-client privilege occurred as to paragraphs nine through thirteen and their subparagraphs due to the City's inadvertent production of the privileged document.

## CRIME–FRAUD EXCEPTION

Plaintiffs also allege that the crime or fraud exception to the attorney-client privilege applies to the document. However, "[t]o invoke the crime/fraud exception, a party must establish a *prima facie* case that a crime has been committed." *Indus. Clearinghouse, Inc. v. Browning Manuf. Div. of Emerson Elec. Co.,* 953 F.2d 1004, 1008 (5th Cir.1992). Plaintiffs have the burden and have failed to come forward with any evidence that a crime has been committed. Accordingly, the crime-fraud exception is inapplicable in this case.

## CONCLUSION

For the foregoing reasons, the City's Motion for a Protective Order is **GRANTED** as to paragraphs nine through thirteen and their subparagraphs. As to paragraphs one through eight, the City's Motion for a Protective Order is **DENIED**. Accordingly, Plaintiffs are directed not to mention, use, or disclose paragraphs nine through thirteen and their subparagraphs of the memo in any way or for any purpose.

**IT IS SO ORDERED.**