**UNITED STATES of America, Plaintiff,**

v.

**MALLINCKRODT, INC., Shell Oil Co., and Solutia, Inc., Defendants.**

**Mallinckrodt, Inc. and Solutia, Inc., Counterclaim and Third–Party Plaintiffs,**

v.

**Anheuser–Busch, Inc., et al., Third–Party Defendants.**

**No. 4:02CV01488 ERW.**

United States District Court, E.D. Missouri, Eastern Division.

Feb. 16, 2005.

a duty to dismiss for lack of subject matter jurisdiction *sua sponte* under Rule 12(h)(3) when it is appropriate, as it is here.

Courtney Ingraffia, Dawn B. Goldsmith, Elizabeth L. Loeb, Paul Stokstad, Thomas L. Sansonetti, Katherine A. Loyd, U.S. Department of Justice, Washington, DC, Denise Roberts, U.S. Environmental Protection Agency, Kansas City, KS, Maria C. Sanchez, Office of U.S. Attorney, St. Louis, MO, for Plaintiff.

Joseph G. Nassif, Ron Hobbs, II, Jonathan Eric Berry, Patrick M. Flachs, Husch and Eppenberger, LLC, Anthony L. Martin, Joseph F. Callahan, Sandberg and Phoenix, G. Keith Phoenix, Sandberg Phoenix & Von Gontard, P.C., John F. Cowling, Armstrong Teasdale, LLP, Kathleen M. Whitby, Spencer and Fane, LLP, Michael A. Fisher, Stolar Stephen L. Beimdiek, Lashly and Baer, P.C., Thomas J. Noonan, Thomas J. Noonan, P.C., Daniel E. Wilke, Wilke and Wilke, P.C., Partnership, Stephen P. Krchma, Law Office of Stephen P. Krchma, Christopher E. Erker, Darci F. Madden, Bryan Cave LLP, Jeffrey E. Atkinson, Carmody and MacDonald, St. Louis, MO, Edward L. Kropp, Lindsey K. Zamonski, Robert G. Mclusky, Jackson and Kelly, PLLC, Charleston, WV, Joseph R. Lanser, Seyfarth and Shaw, Chicago, IL, Thomas G. Safley, Hodge and Dwyer, Springfield, IL, E. W. Gentry Sayad, Edwin L. Noel, Armstrong Vincent D. Vogler, Vogler and Associates, Michael K. Daming, Murphy and Wasinger, L.C., Neal W. Settergren, Alan K. Goldstein, Goldstein and Price, L.C., Teasdale, LLP, St. Louis, MO, Daniel C. Murray, Garrett L. Boehm, Jr., Johnson and Bell, Chicago, IL, James T. Price, Spencer and Fane, LLP, Kansas City, MO, Howard C. Crystal, Novack and Burnbaum, New York, NY, Ellen S. Goldman, Goldman Law Office, Overland Park, KS, Robert A. Miller, Brian E. McGovern, McCarthy and Leonard, Chesterfield, MO, Frederick S. Mueller, Johnson and Bell, Chicago, IL Roger L. Freeman, Sherry D. Haller, Davis and Graham, Denver, CO, Neal Cook Geddes, Spencer and Fane, LLP, Kansas City, MO, Sam J. Alton Gallop and Johnson, Clayton, MO, Kevin T. McLaughlin, McCarthy and Leonard, Chesterfield, MO, Daniel K. Barklage, John R. Hamill, III, Barklage and Brett, St. Charles, MO, J. Gregory Smith, Robert J. Karl, Ulmer and Berne, LLP, Columbus, OH, Thomas D. Lupo, Seyfarth and Shaw, Chicago, IL, Thomas C. Jackson, Baker and Botts, Dawn B. Goldsmith, U.S. Department of Justice, Washington, DC, Beth C. Boggs, Victor T. Avellino, Boggs and Boggs, LLC, Clayton, MO, Jessica E. Merrigan, Lathrop and Gage, Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

WEBBER, District Judge.

This matter comes before the Court upon Plaintiff USA's Motion for Protective Order [doc. # 572], which was filed with leave of Court due to the stay order currently governing this case. A hearing was held on February 14, 2005, and the Court heard ar-

guments from Plaintiff USA ("USA") and Third–Party Defendant The Estate of Irving Rubin ("the Estate") on the Motion.

This request for a protective order concerns a certain report inadvertently produced during the course of discovery in this litigation. According to USA, in December 2004, it realized that it had inadvertently produced a privileged report to counsel for the various defendants in this case. In its Motion and at the hearing on February 14, USA represented to the Court that this report was drafted by an EPA attorney in order to relay EPA's analysis of the case to the Department of Justice for the purpose of bringing the present litigation.[1] USA further states that this report is a privileged attorney-client communication and that it is also protected as work product. After investigating the circumstances of the inadvertent disclosure, USA sent an e-mail communication dated January 5, 2005, to all counsel to inform them of the inadvertent disclosure and to request that they destroy the report, along with any notes or records concerning the content of those pages. Specifically, the e-mail communication requested that counsel destroy the report in accordance with a prior agreement between USA and the various parties.[2] When counsel for the Estate informed counsel for USA that he had never signed such an agreement, counsel for USA requested that he sign the agreement now and that he apply its terms retroactively to the inadvertently disclosed document. Counsel for the Estate declined to do so, stating his belief that he was not required to destroy the report or his notes concerning the report.

■ In support of its current Motion, USA states that the report is privileged and that the privilege has not been waived as a result of the inadvertent disclosure. In opposing the Motion, the Estate argues that USA has not met its burden in establishing that the report is privileged and that, even if the report is privileged, that privilege has been waived as a result of the voluntary production. The parties agree that the applicable test to determine whether a waiver has occurred in this situation is set forth in *Gray v. Bicknell*, 86 F.3d 1472 (8th Cir.1996). This test requires the Court to examine five factors: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to rectify the disclosure, and (5) whether the overriding interest of justice would be served by relieving the party of its error." *Gray*, 86 F.3d at 1484. If, after considering these factors, the court determines that a waiver has occurred, the documents lose their privilege. *Id.* This test "accounts for the errors that inevitably occur in modern, document-intensive litigation, but treats carelessness with privileged material as an indication of waiver." *Id.*

■ For the reasons that follow, the Court finds that the litigation report is a privileged document and that the privilege has not been waived by the inadvertent disclosure. As an initial matter, the Court finds that the report in question is clearly privileged. In its Motion and at the hearing on this matter, USA described the document as a litigation report drafted by an EPA attorney and sent to the Department of Justice. USA further noted that the litigation report contained a thorough legal analysis of the case. In an attachment to its Motion, USA also provides an e-mail communication and subsequent letter written by Courtney Ingraffia, counsel for USA, describing the protected nature of the report. *See* Mot. for Leave [doc. # 570] Ex. 1, 3. The Court is also in receipt of three pages of excerpts from the report, filed under seal by the Estate in support of its opposition to the Motion. According to the Estate, the report is entitled, "Civil Litigation Referral Report Great Lakes Container

---

**1.** According to the Estate, this is a 63–page document entitled "Civil Litigation Referral Report Great Lakes Container Corporation Superfund Site St. Louis, Missouri."

**2.** This agreement, entitled "Agreement on Inadvertent Disclosure of Privileged Material," states that the signatories to the agreement will utilize

certain procedures when producing documents during the course of this litigation. Under certain conditions, a producing party may request the return of any privileged document inadvertently produced. Thereafter, no party may use the privileged document.

Corporation Superfund Site St. Louis, Missouri." Upon consideration, the Court is satisfied that USA has met its burden of demonstrating the protected nature of the report.[3] The litigation report constitutes a communication between an attorney and its client and is thus protected by the attorney-client privilege.

■ Because the litigation report is privileged, the Court must determine whether that privilege was waived by the inadvertent disclosure at issue here. First, the Court considers "the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production." *Gray*, 86 F.3d at 1484. USA points out that it did segregate the privileged documents in its extensive privilege review of more than 61,000 pages, but that the litigation report was nonetheless copied onto the CD–ROMs produced to defense counsel in this case.[4] USA also drafted, and requested that at least some of the parties enter into, the inadvertent production agreement. The Estate points out that, not only was the agreement not presented to or signed by counsel for the Estate, but that USA failed to present the agreement to many of the other attorneys in this matter. Further, according to the Estate, the report was not marked in any manner that might alert counsel to its protected nature. After considering the arguments made by the parties, the Court finds that USA did take reasonable precautions to prevent the inadvertent disclosure. USA did engage in a privilege review, which this Court finds to be a reasonable manner of protecting privileged documents from disclosure. Any argument that it was unreasonable to fail to mark the report as privileged or otherwise protected is unpersuasive given that the author of the report had no intention of sharing the report with anyone other than

the Department of Justice. Moreover, the title and content of the document alone would likely alert counsel that the document might be protected.

Second, the Court must consider the number and the extent of the inadvertent disclosures. *Gray*, 86 F.3d at 1484. Here, USA inadvertently disclosed one litigation report in 61,000 pages. While the Estate argues that the number of disclosures is very high due to USA's disclosure to more than fifty attorneys in this litigation, the Court finds this argument unpersuasive. In reality, USA made one inadvertent disclosure. Unfortunately for USA, that single inadvertent disclosure was multiplied fifty times over as it sent each defendant a copy of the CD–ROM set in question. The fact remains, however, that a single inadvertent disclosure is at issue here.

Next, the Court considers "the promptness of measures taken to rectify the disclosure." *Gray* 86 F.3d at 1484. In evaluating promptness, at least one court has considered when the disclosing party realized, or should have realized, the inadvertent disclosure. *See Kan. City Power & Light Co. v. Pittsburg & Midway Coal Mining. Co.*, 133 F.R.D. 171, 172 (D.Kan.1989). This Court finds this rule persuasive and will apply it in the circumstances at issue in this case. The Estate argues that USA was not prompt because it did not request the return of the report until more than six months after the report had been produced. According to the Estate, if USA had been exercising "reasonable diligence" in this matter, it would have discovered the inadvertent disclosure at an earlier time. The Estate's argument is unavailing here because the relevant time period for the Court's consideration begins in December 2004, when USA first learned of the inadvertent disclosure.[5] Here, USA acted promptly

---

**3.** During the hearing on February 14, USA offered to provide the Court with a copy of the full report for *in camera* review. USA also offered to provide the Court with an affidavit from Courtney Ingraffia, the Department of Justice attorney who presumably received the litigation report. Because the Court has determined that the litigation report is clearly protected by the attorney-client privilege, the full report and the affidavit will not be required.

**4.** According to USA, it first segregated the privileged documents from the non-privileged documents. The non-privileged documents were subsequently scanned onto CD–ROMs, which were then produced to the parties.

**5.** Further, in stating that USA would have discovered the inadvertent disclosure at an earlier time if had exercised reasonable diligence, the Estate appears to be referring to its earlier suggestion that, in addition to conducting a privilege review of the documents, USA should have searched the

after learning of the disclosure in mid-December 2004 by alerting all counsel for defendants via e-mail on January 5, 2005, that the litigation report had been inadvertently produced. Moreover, at that time, USA requested that the parties destroy the report and any related notes. When USA learned that the Estate had not signed the agreement and that the Estate would not now sign the agreement and give it retroactive effect, USA promptly filed this Motion for protective order.

Finally, the Court must consider "whether the overriding interest of justice would be served by relieving the party of its error." *Gray*, 86 F.3d at 1484. The Estate states that it has already reviewed the litigation report, analyzed it, discussed it with its clients, and generally relied on it as part of its defense. According to the Estate, disclosure of the report would advance the resolution of the case because the report admits important facts about the history, ownership, operation, and cleanup of the site, thus removing certain facts from controversy. The Estate argues that suppressing the report threatens to suppress the truth and that it deprives the Estate of an effective means to cross-examine government witnesses who testify contrary to it. The Estate argues that USA's claim of privilege came only after the Estate cited helpful factual information contained in the report. USA points out that the Estate was never entitled to the litigation report because the report is protected by both the attorney-client privilege and the work product doctrine.

Here, the interest of justice favors relieving USA of its error. The litigation report does contain admissions that would be helpful to the Estate in this case; however, the report is privileged, making it clear that the Estate was never entitled to the report. Contrary to the Estate's contentions, it does not appear that USA's claim of privilege came about as a result of its conversation with the Estate; rather, USA's *realization* that the litigation report had been inadvertently disclosed came about as a result of

that conversation. Further, there appears to be minimal danger that the truth will be suppressed by enforcing the protected nature of the litigation report; any factual information contained therein can still be proven in some other manner. Moreover, the attorney-client privilege is designed to protect exactly the kind of communication at issue here. The report was intended to be an honest evaluation of the case for the eyes of the Department of Justice only. Such forthright analysis is necessary and helps to ensure that meritorious cases are given the attention that they require. Remedying USA's mistake undoubtedly creates hardship for the Estate, especially because the Estate has already relied on the document to some extent and because the report contains admissions favorable to the Estate. This hardship, however, does not negate the injustice that will occur if the report is stripped of its privileged status as a result of a single inadvertent disclosure under the circumstances present in this case. Upon a showing that the Estate will suffer undue prejudice at trial, the Court can consider remedial action.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's USA's Motion for Protective Order [doc. # 572] is **GRANTED.** All defendants and third parties to this action shall destroy all copies of pages 203–265 in document 2012066 as well as any notes or records in any form concerning the content of those pages. No party shall in any way copy, reproduce, refer to, quote, cite, rely upon, or otherwise use in any manner pages 203–265 of document 2012066 in any further proceedings during the course of this litigation unless otherwise directed by this Court.

---

CD–ROMs after scanning the documents onto disk to ensure that no protected documents had been placed inadvertently on the disks. While this might well have been a prudent step, and one which in hindsight would have likely prevented the current problem, this Court cannot say that it was unreasonable to omit to take this second step.