Saul ZAPATA, et al., Plaintiffs,

v.

IBP, INC., Defendant.

Civil Action Nos. 93–2366–EEO, 96–2242–EEO.

United States District Court, D. Kansas.

July 15, 1997.

John L. Hampton, David W. Hauber, Glenn B. Brown, Boddington & Brown, Chtd., Kansas City, KS, P. John Brady, R. Lawrence Ward, Shughart, Thomson & Kilroy, Kansas City, MO, for Saul Zapata, Gustavo Adolfo Vasquez, Francisco Ponce, Antonio Martinez, Manuel Sigala, Graciela Garcia, Antonio Ponce, Enrique Molina, Jr., Baltazar Betran, Pedro Lira, Marco Interial, Jose Luis Velasquez, Olga Cabral, Juan Rucker.

Jack L. Whitacre, Spencer, Fane, Britt & Browne, Kansas City, MO, J. Nick Badgerow, Michaela M. Warden, Spencer, Fane, Britt & Browne, Overland Park, KS, Russell P. Wright, IBP, Inc., Dakota City, KS, Paula S. Greathouse, Lawrence, KS, for IBP, Inc.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on the motion of defendant IBP, Inc., for protective order (Doc. # 536). The motion concerns the Expert Witness Report of plaintiff's expert, Dr. Charles Craypo, which contains handwritten notes of defendant's attorneys ("the Craypo Report"). Defendant contends that the handwritten notes constitute attorney-client privilege, and were inadvertently produced to plaintiffs' counsel. Defendant seeks an order from the court requiring plaintiffs' attorneys to return all copies of the Craypo Report, and preventing any use by plaintiffs of the attorneys' handwritten annotations on the Craypo Report. Defendant seeks to substitute a copy of Dr. Craypo's report that does not contain IBP's attorneys' notes. Plaintiffs object to defendant's motion, and have refused to return the document at issue. For the reasons stated below, the motion for protective order is granted.

### I. Factual Background.

The following constitutes a brief summary of the relevant facts, as related by defendant and uncontested by plaintiffs. On March 13, 1997, Michele Baird, an attorney for IBP, spoke by telephone with Dr. Keith Chauvin, an expert witness for IBP. Dr. Chauvin advised Ms. Baird that he had misplaced the copy of Dr. Craypo's report he had received several months earlier, and requested that

Ms. Baird send him another copy of Dr. Craypo's expert report. Later that day, Ms. Baird requested her secretary to send a copy of Dr. Craypo's expert report to Dr. Chauvin. A copy of the report was sent to Dr. Chauvin on that day. On March 19, 1997, IBP discovered that Ms. Baird's secretary had sent Dr. Chauvin a copy of Dr. Craypo's report containing handwritten notations of Ms. Baird and another IBP attorney, Michelle Dreibelbis. None of the attorneys' notations are located on the first page of the Craypo report.

On March 18, 1997, plaintiffs' counsel deposed Dr. Chauvin. In response to the document request attached to his deposition notice, Dr. Chauvin produced his file, which contained the Craypo report annotated with the attorneys' notes. Dr. Chauvin's file included over one thousand documents. Shelly Freeman, IBP's local counsel, defended Dr. Chauvin's deposition. Because she did not know who had written the notations on Dr. Craypo's report, she did not object when the report was produced to the plaintiffs' attorney during the deposition. Dr. Chauvin testified in his deposition that he did not pay attention to the notes when he reviewed the Craypo report.

Subsequently, on March 19, 1997, Ms. Freeman asked Ms. Baird about the notations on Dr. Craypo's report. According to Ms. Baird, this was the first time she had any knowledge that the copy of Dr. Craypo's report sent to Dr. Chauvin on March 13, 1997, contained the attorneys' notations. That same day, Ms. Baird faxed a letter to plaintiffs' counsel, notifying them that "the production of the report containing attorney's [sic] notes was inadvertent and unintentional," and requesting that they return all copies of the report containing attorneys' notations. Plaintiffs' counsel have refused to comply with Ms. Baird's request.

## II. *Discussion.*

■ Although defendant characterizes the issue as whether the Craypo Report is a document protected by the attorney-client privilege, the court finds the facts more properly invoke the work product doctrine. An attorney's "work product" protection is something separate and apart from the attorney-client privilege. *Mike v. Dymon,* 1996 WL 674007, *8 (D.Kan.1996) (citing *Great Plains Mut. Ins. Co. v. Mutual Reins. Bureau,* 150 F.R.D. 193, 196 (D.Kan.1993)). *See also* Annot., Development, Since *Hickman v. Taylor,* of Attorney's "Work Product" Doctrine, 35 ALR 3d 412, § 2[a] (1971). The mental impressions prepared or formed by an attorney in the course of his legal duties for his own use in prosecuting his client's case and contained in his files fall outside the scope of the attorney-client privilege, and hence are not protected from discovery on that basis; nevertheless, they are protected as the "work product" of an attorney. *Id.* In the instant case, the court has reviewed the annotations to the Craypo report, identified as attorneys' notes, and finds that the notations contain the attorneys' mental impressions, conclusions, opinions, or legal theories, made with an eye toward litigation. *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947). The court also finds, based upon the facts presented, that the disclosure of the annotated Craypo report was inadvertent, inasmuch as such disclosure was not intended by IBP's attorneys.

■ In order to be protected by work product immunity, the party asserting the doctrine must show (1) that the material is a document or tangible thing, (2) that the material was prepared in anticipation of litigation, and (3) that the material was prepared by or for a party or by or for the party's representative. *Burton v. R.J. Reynolds Tobacco Co.,* 167 F.R.D. 134, 139 (1996) (citing *Jones v. Boeing Co.,* 163 F.R.D. 15, 17 (D.Kan.1995)). The facts presented are sufficient to establish each of the foregoing requirements. Thus, the issue before the court is whether defendant's production of the Craypo Report constitutes a waiver of the work product protection.

■ The courts in this district employ a five-factor test to determine if inadvertent disclosure of documents effects a waiver of the attorney-client privilege. *See Monarch Cement Co. v. Lone Star Industries, Inc.,* 132 F.R.D. 558, 559 (D.Kan.1990); *Kansas City Power & Light Co. v. Pittsburg & Midway Coal Mining Co.,* 133 F.R.D. 171, 172

(D.Kan.1989) (both citing *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323 (N.D.Cal. 1985)). This same five-factor test also is used to assess whether inadvertent disclosure of documents results in a waiver of the work product protection. *In re Wyoming Tight Sands Antitrust Cases*, No. 85–2349–S, 1987 WL 93812 (D.Kan.1987). The factors are as follows:

1. The reasonableness of the precautions taken to prevent inadvertent disclosure;

2. The time taken to rectify the error;

3. The scope of discovery;

4. The extent of disclosure; and

5. The overriding issue of fairness.

*Id.* at *4 (citing *Hartford Fire Ins.*, 109 F.R.D. at 332). We shall consider each of these five factors in turn.

With respect to the precautions taken, defendant contends that its attorneys diligently attempted to protect confidential information by carefully screening documents. While the court observes that defendant's attorney could have been more careful by personally inspecting the Craypo report before sending it out, on balance, this factor weighs in favor of finding the work product protection was not waived. The court finds evidence of precautionary measures in the fact that the Craypo Report is the only document of which defendant or the court is aware that has been inadvertently produced to plaintiffs' counsel during the three and one-half years of litigation. Plaintiffs' counsel suggest that defendant's attorneys could have avoided the disclosure by reviewing each document in Chauvin's file before it was turned over at his deposition. However, given the short time frame (defendant received seven days' notice that plaintiffs would be requesting Dr. Chauvin to produce documents at his deposition) and the number of documents actually produced at Chauvin's deposition (more than 1,000 documents) the court finds that the inadvertent production of the Craypo Report does not demonstrate a careless attitude towards work-product documents that would justify a finding of waiver.

■ With respect to the second factor, the time taken to rectify the error, the court finds that this factor weighs heavily in favor of defendant. The evidence of record indicates that IBP's counsel contacted plaintiffs' attorneys by facsimile the very day the inadvertent disclosure was discovered, and attempted to rectify the error by requesting return of the Craypo Report. The relevant time for rectifying any error begins when a party discovered or with reasonable diligence should have discovered the inadvertent disclosure. *Kansas City Power & Light*, 133 F.R.D. at 172. The court determines that defendant could not have acted any sooner in attempting to rectify the error. While plaintiff suggests that IBP should have objected to the production of the Craypo Report during Dr. Chauvin's deposition, according to Ms. Freeman's affidavit, she did not know whose notes were on the report at the time of the deposition. Without such knowledge, she had no reason to object to production of the Craypo Report.

The third factor, scope of discovery, also weighs against a finding of waiver. Defendant estimates over forty thousand documents have been produced by IBP in the three and one-half years of litigation in this case. Plaintiffs do not dispute this estimate. The Craypo Report is the only document of which IBP's attorneys are aware that has been inadvertently disclosed. Given the enormous number of documents produced by IBP, the inadvertent disclosure of one document is minor in relation to the overall case and, therefore, this factor weighs in favor of defendant. As the court explained in *In re Wyoming Tight Sands Antitrust Cases*, No. 85–2349–S, 1987 WL 93812 (D.Kan.1987):

Where document production is extensive ... a finding that an inadvertent disclosure of privileged documents waives the attorney-client privilege or work-product protection does not advance the aim of full and free discovery. Parties might tend to produce fewer documents or delay production for fear of losing protection for otherwise valid privilege claims.

*Id.* at *5 (citing *New York State Energy Research and Dev. Auth. v. Nuclear Fuel Servs., Inc.*, 36 Fed. R. Serv.2d 1511, 1519 (W.D.N.Y.1983)).

The fourth factor, extent of disclosure, also weighs in favor of defendant. The record reflects that the use of the annotated Craypo report by Dr. Chauvin and by plaintiffs' attorneys has been minimal. The excerpted portion of Dr. Chauvin's deposition indicates that, when questioned by plaintiffs' attorneys regarding the annotations, Chauvin stated that he did not pay any attention to the notations on the report. In addition, Dr. Chauvin filed his expert report in this case on January 17, 1997—well before he reviewed the Craypo Report at issue. Consequently, the attorneys' notes on the report could not possibly have influenced Chauvin's opinion in the case; thus, any cross-examination of Chauvin regarding the attorney's notes would not be probative as to Chauvin's expert opinion contained in his report. According to defendant's counsel, the brief questioning by plaintiffs' attorney during Chauvin's deposition is the *only* use of the attorneys' notes made on the Craypo Report in the entire case. Moreover, although plaintiffs' counsel may have intensively reviewed the attorneys' notations on the report, intensive review of inadvertently disclosed documents does not constitute extensive disclosure. *Kansas City Power & Light Co.*, 133 F.R.D. at 173. The minimal extent of disclosure of the report supports preserving IBP's work product protection.

Finally, in examining the fairness factor, we conclude that fairness dictates that IBP should not be deemed to have waived its work product protection because of the disclosure. As we succinctly stated in *In re Wyoming Tight Sands Antitrust Cases,* No. 85–2349–S, 1987 WL 93812 (D.Kan.1987):

> [T]he court finds no compelling reason to rigidly apply a waiver of work product . . . to the Reiter notes. Common sense suggests that a party might inadvertently fail to keep within its grasp one or two documents in the course of producing 1,500,000. Beyond that simple measure, however, defendants have demonstrated no urgent need for the notes. They have shown no hint of prejudice if they do not obtain them. . . . The arguments of defendants reduce themselves to little more than a claim that they should not be deprived of a tactical advantage fortuitously gained by a party's inadvertence.

*Id.* at \*5. Such reasoning applies equally to the plaintiffs in the instant case.

In sum, upon considering all five factors, the court finds defendant IBP's inadvertent disclosure of the Craypo Report does not amount to a waiver of its work product protection. Accordingly, defendant's motion for protective order is granted.

The court is not particularly impressed with plaintiffs' unreasonable opposition to this motion. Defendant, however, has made no request to assess against plaintiffs the defendant's reasonable expenses, including attorneys' fees, under Federal Rules of Civil Procedure 26(c) and 37(a)(4)(A); therefore, none will be assessed.

IT IS THEREFORE ORDERED that defendant IBP's motion for protective order (Doc. # 536) is granted. Plaintiffs' counsel is directed to return all copies of the Craypo Report containing attorneys' notations to IBP's attorneys. Plaintiffs may not use this document except by further order of the court. The court reporter is directed to substitute a copy of Dr. Craypo's report with the attorneys' notations redacted for the current Exhibit 355 to Dr. Chauvin's deposition. Defense counsel is directed to provide a copy of said report, along with a copy of this Memorandum and Order, to the court reporter.