**AMERICAN CROP PROTECTION ASSOCIATION, et al., Plaintiffs,**

v.

**U.S. ENVIRONMENTAL PROTECTION AGENCY, Defendant.**

**No. CIV.A.00–0811.**

United States District Court, District of Columbia.

Jan. 31, 2002.

Seth Goldberg, Cynthia Taub, Steptoe & Johnson LLP, Washington, DC, Counsel for Plaintiffs.

Lois Godfrey Wye, Environmental Defense Section, U.S. Department of Justice, Washington, DC, Counsel for Defendant.

### *MEMORANDUM*

ROBERTSON, District Judge.

Section 6(a)(2) of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 et seq., requires that pesticide registrants report to the Environmental Protection Agency (EPA) on an ongoing basis "factual information regarding unreasonable adverse effects on the environment of [a] pesticide." FIFRA § 6(a)(2), 7 U.S.C. § 136d(a)(2). EPA interprets that directive to cover *opinions* regarding unreasonable adverse effects rendered by a registrant's employees or agents, and it has issued a regulation to that effect. 40 C.F.R. § 159.158(a). In this suit, the American Crop Protection Association and others challenge that regulation on two grounds: first, that requiring opinions to be reported is beyond the authority Congress gave the EPA to require the reporting of "factual information"; and, second, that to the extent the regulation requires registrants to report

the opinions of non-testifying expert witnesses prepared in preparation of litigation, or of lawyers, it "undermines the availability of the work product doctrine and the attorney-client privilege to pesticide registrants," Pl. Mem. at 2, and is thus an unreasonable interpretation of the statute and contrary to law. I find, for the reasons set forth below, that EPA did not exceed its authority and that its interpretation of the statute is entitled to deference and reasonable. The order that accompanies this opinion accordingly denies plaintiffs' motion for summary judgment and grants the government's cross-motion—except to the extent that that motion seeks an advance blanket ruling on lawyer-client privilege and attorney work product. No ruling is made on that issue, because this record presents no concrete claim of privilege or of work product protection.

### Background

A pesticide must be registered before being placed on the market. It will be registered only if EPA finds that it will "perform its intended function without unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(C). Registration is not the end of the regulatory process: a pesticide registration may be maintained only if it does not "generally cause[ ] unreasonable adverse effects on the environment." 7 U.S.C. § 136d(b). Congress gave the EPA authority to call for additional data as needed for the ongoing evaluation of pesticides. "If the Administrator determines that additional data are required to maintain in effect an existing registration of a pesticide, the Administrator shall notify existing registrants." The authority to call for more data has teeth: if a registrant fails to provide information requested about a pesticide, EPA

must issue a notice of intent to suspend the pesticide's registration. 7 U.S.C. § 136a(c)(2)(B). The statute also imposes upon registrants a duty of self-reporting. If "at any time after the registration of a pesticide the registrant has additional factual information regarding unreasonable adverse effects on the environment of the pesticide, the registrant shall submit such information to the Administrator." FIFRA § 6(a)(2), 7 U.S.C. § 136d(a)(2). It is that requirement which gives rise to the dispute presented in this case.

The dispute between pesticide manufacturers and the EPA about reporting has been going on for more than twenty-six years.[1] EPA's first regulation under section 6(a)(2) required registrants to report *any* information about adverse effects, 40 Fed.Reg. 28242, 28277 (July 3, 1975). EPA revoked that regulation in 1978, after concluding in response to an industry challenge that it "inadequately expresse[d] the agency's interpretation of the requirements imposed by FIFRA Section 6(a)(2)." 43 Fed.Reg. 37610 (Aug. 23, 1978). EPA then issued an "interpretive memorandum" setting forth its view that the statute required registrants to report opinions, including expert opinions, as to the risks or benefits of registered pesticides. An industry challenge to that memorandum was dismissed for lack of standing, upon a finding that the memorandum had no legal effect, *Chemical Specialties Mfrs. Ass'n v. United States EPA,* 484 F.Supp. 513, 519 (D.D.C.1980)(Robinson, J.). The judge nevertheless volunteered his view that a requirement to report expert opinions would exceed EPA's authority: "If Congress had intended to give § 6(a)(2) such broad scope, it would not have limited the information required to facts." *Id.* at 518.

---

**1.** For nearly two of those years, it must be acknowledged, the dispute has been resident in this Court.

EPA tried again in 1985. This time it issued a proposed interpretive *rule* and statement of policy that required the reporting of expert opinions. The preamble to this rule stated that "EPA and the Department of Justice believe that EPA is free to take the position that expert opinion evidence ... [is] covered by Section 6(a)(2) despite the dicta in *CSMA,* and EPA continues to take this position." 50 Fed.Reg. 38115, 38116 (Sept. 20, 1985). After receiving comments, however, the agency decided not to make the rule effective after all, stating that "clarification of the rule was appropriate." 57 Fed.Reg. 44290–91 (Sept. 24, 1992).

Finally, EPA resorted to formal notice and comment rulemaking. The present rules implementing FIFRA section 6(a)(2) are the result of that process. 40 C.F.R. Part 159, 62 Fed.Reg. 49370 (Sept. 19, 1997). Since their effective date in August 1998, they have required that a registrant report information, possessed or received, that is "relevant to the assessment of the risks or benefits" of pesticide registrations, if the information falls within any of seven enumerated categories, 40 C.F.R. § 159.158(a),[2] or if the registrant "knows or reasonably should know" that the information might raise "concerns" with the EPA about the continued registration of the product. 40 C.F.R. § 159.195. The information that must be reported includes "conclusion(s) or opinion(s) rendered by a person who meets any of the following: (1) Who was employed or retained (directly or indirectly) by the registrant, and was likely to receive such information. (2) From whom the registrant requested the opinion(s) or conclusion(s) in question. (3)

Who is a qualified expert as described in § 159.153(b)."[3] 40 C.F.R. § 159.158(a) A registrant need not submit clearly erroneous information, previously submitted information, publications available to the agency, and information about eliminated inert compounds. § 159.158(b).

After plaintiffs instituted this action, EPA let it be known that it would not consider attorneys' legal theories to be information relevant to the assessment of risks and benefits, Pesticide Registration Notice 2000–8. EPA insists nevertheless that it "has no intention to broadly exempt information covered by the attorney work-product doctrine," 62 Fed.Reg. 49377, and that "[a]ttorneys' opinions *are* reportable ... when they are developed in the ordinary course of business and are based on otherwise reportable information," Def.'s Mem. at 25 n. 16. EPA offers registrants the opportunity to request a waiver, which it says it will evaluate giving consideration to claims of privilege or of substantial prejudice to the registrant and the value of the information to EPA in performing its risk/benefit analysis. 62 Fed.Reg. 49377. No registrant has ever availed itself of that opportunity.

### Discussion

Judicial review of EPA's interpretation of the statute is accomplished according to the two-step approach set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). A court must first ask if the statute is clear and unambiguous. If it is, the language of the statute controls. *Id.* "[I]f the statute

---

**2.** Toxicological and ecological studies; discontinued studies; human epidemiological and exposure studies; information on pesticides in food, feed, or water; metabolites, degradates, contaminants, and impurities; toxic or adverse effect incident reports; and failure of performance information.

**3.** "[O]ne who, by virtue of his or her knowledge, skill, experience, training, or education, could be qualified by a court as an expert to testify on issues related to the subject matter on which he or she renders a conclusion or opinion."

is silent or ambiguous with respect to the specific issue," however, then "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778.

In this case, the first *Chevron* step is a short one, for the statutory words "factual information" are not unambiguous. The line between facts and opinions is fuzzy, and the distinction, "at best, one of degree." *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 167, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988); *see also United States v. Pierson,* 503 F.2d 173, 176 (D.C.Cir. 1974); Wigmore, *Evidence* § 1919, at 14–15 ("[N]o such distinction is scientifically possible.... Nearly everything which we choose to call 'fact' either is or may be only 'opinion' or inference."). Expert witness reports typically contain both data and conclusions. The existence of an opinion may be said to be a fact. As the EPA stated in its original interpretive notice, at least "[o]ne dictionary defines 'factual' as 'of or containing facts' " and information as "something told; news; intelligence, word." 43 Fed.Reg. 37611, 67613 (Aug. 14, 1978); *see also* American Heritage Dictionary (3d Ed.2000) (defining "factual" as "of or containing facts"). It is clearly true, as EPA states in its preamble to the regulations, that "a conclusion as to whether a particular growth seen in a sacrificed test animal is a benign or malignant growth is not a matter of uncontestable fact, but rather, is the expression of an informed judgment by a trained professional." 62 Fed.Reg. at 49378. Information to the effect that a pathologist has seen lesions on slides and thinks they are malignant is surely "factual information." Information that a toxicologist thinks the malignant lesions were caused by exposure to a pesticide is surely "factual information."

*Chevron*'s second question is "whether the agency's [interpretation] is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. The agency's interpretation is entitled to ordinary deference,[4] and will be given "controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Chevron,* 467 U.S. at 844, 104 S.Ct. 2778.

In plaintiffs' submission, EPA's interpretation of the words "factual information" is not a permissible construction of the statute because it encroaches upon the attorney-client privilege and work product protection, in derogation of common law and without clear Congressional authorization. The principal if not exclusive focus of this claim is on the opinion of a nontestifying expert—one consulted, say, in connection with a product liability case involving a registered pesticide. In plaintiff's submission, a requirement to disclose such an opinion under § 6(a)(2) would "compromise" work product protection, Pl. Mem. at 21, because information disclosed to EPA would become available to the public[5] and thus to opposing parties in litigation. EPA's response is that the

---

**4.** Substantial deference is given to "longstanding administrative interpretation[ ]s" that Congress has declined to revise or repeal, *see Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 845–46, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986). FIFRA § 6 has been amended six times since EPA first interpreted "factual information," Govt. Mem. at 9 and n. 8, but EPA's own off-again, on-again treatment of the issue does not qualify as a "longstanding administrative interpretation," nor is

there evidence that the dispute involved in this case was ever the subject of debate in Congress.

**5.** It is indeed EPA's position that § 6(a)(2) materials will be disclosed if requested under the Freedom of Information Act, unlike information submitted under § 3(c)(2)(B), which will be protected as confidential business information. Class Determination 1–99 (Sept. 28, 1999) (J.A. 170).

work product doctrine protects attorneys' legal theories, strategies and opinions,[6] not documents and tangible things prepared by others; that protection for the opinions of non-testifying experts is the creature of Fed.R.Civ.P. 26(b)(4)(B), not of common law work product doctrine; and that in any event the work product privilege (if it applied) would be overridden by EPA's need for information essential to its mission of protecting health and the environment.

What this record lacks is facts to which those arguments might be applied. It does not appear of record that any registrant has yet requested a waiver of the reporting requirement on privilege grounds.[7] Plaintiffs do not even offer examples, although the facts of another case, *United States v. Gold*, 470 F.Supp. 1336 (N.D.Ill.1979), might be illustrative. In *Gold*, a registrant was indicted for submitting one toxicology report that found no adverse results but withholding three other independent analyses of the same test results that reached dramatically different conclusions. Now assume that the same four reports were commissioned by counsel in the course of defending a product liability suit, and that the authors of the three damning reports did not testify. Plaintiff's position (as I understand it) is that the three adverse reports are protected work product.

Those adverse reports may or may not be protected in the context of the product liability suit; the outcome would depend upon whether Rule 26(b)(4)(B)'s "exceptional circumstances" test is met. Outside the context of that litigation, however, it is questionable whether the three adverse reports enjoy any protection at all. They do not contain or reflect the strategies or mental impressions of counsel.[8] Facts known and opinions held by non-testifying experts, by themselves, are not privileged and are not work product. Indeed, the new sub-sections of Rule 26(b)(4) enacted in 1970 "repudiate[d]" the notion that expert opinions are privileged and "rejecte[d]" the notion that they are work product, adopting instead "a form of the . . . doctrine of 'unfairness.'" Advisory Committee Notes to Rule 26, 1970 Amendment, subdivision (b)(4).

I cannot find in this record any indication that EPA's construction of FIFRA § 6(a)(2) is unreasonable or contrary to law. This conclusion does not resolve any particular claim of attorney-client privilege or work product protection, however, because none has been presented. The claim of "encroachment" on privilege is not ripe for decision. *See United States v. Legal Services for New York City*, 100 F.Supp.2d 42 (D.D.C.2000)(blanket claim of privilege is insufficient to demonstrate privilege regarding any specific set of facts); *National Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C.Cir.1996) (no cause of action for injury that is not

6. But EPA maintains that "[a]ttorneys' opinions are reportable [ ] when they are developed in the ordinary course of business and are based on otherwise reportable information," Def's Mot.Summ.J. at 25 n. 16. It does not explain (nor can I imagine) what that means.

7. The preamble to the interpretive rule provides that EPA has the authority to consider requests to waive reporting requirements. 62 Fed.Reg. 49377. The agency offers registrants an opportunity to request a waiver, which the agency will evaluate based on whether the information is indeed privileged, whether providing the information would substantially prejudice the registrant, and whether the information would be helpful to EPA in performing the risk/benefit analysis. *Id.*

8. Unless, that is, counsel's strategy was to commission multiple studies in the hope that one of them would return the desired result. Such a "strategy" deserves no protection.

"certainly impending"); *Northwest Airlines, Inc. v. F.A.A.*, 795 F.2d 195, 201 (D.C.Cir.1986) (not enough that party can "imagine circumstances in which it could be affected by the agency's action"). Plaintiffs do allege that registrants are being "forced to limit their attorneys' investigations in an attempt to avoid obtaining potentially adverse information that would be reportable." Plfs.' Reply at 24 n. 82. I will assume that counsel had a good faith basis for making that claim, but in the absence of affidavit support I give it no weight.

An appropriate order accompanies this memorandum.

### *ORDER*

For the reasons and to the extent set forth in the accompanying memorandum, it is this      day of January, 2002 ORDERED that plaintiffs' motion for summary judgment [# 12] is **denied.** It is FURTHER ORDERED that defendant's cross-motion for summary judgment [# 16] is **granted.**